## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION- TOLEDO

| | |
|---|---|
| MICHAEL RAMSEY, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 3:25-cv-00289 |
| ELITE LEGAL PRACTICE PC, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Now comes MICHAEL RAMSEY ("Plaintiff"), by and through the undersigned, complaining as to the conduct of ELITE LEGAL PRACTICE PC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Ohio Credit Services Organizations Act ("OCSOA") under O.R.C. § 4712.01 *et seq.,* the Ohio Debt Adjusting Statutes pursuant to O.R.C. § 4710.01 *et seq.,* as well as the Ohio Consumer Sales Practices Act ("OCSPA") under O.R.C. § 1345.01 *et seq.*, in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Northern District of Ohio and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Northern District of Ohio.

PARTIES

4.   Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Toledo, Ohio, which lies within the Northern District of Ohio.

5.   Defendant is a credit repair organization, debt settlement provider, and law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 10190 Covington Cross Drive, Suite 300, Summerlin, Nevada.

6.   Defendant is a "person" as defined by 47 U.S.C. §153(39).

7.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

FACTS SUPPORTING CAUSES OF ACTION

8.    In approximately March of 2024, Plaintiff was exploring various debt consolidation and credit repair options as he was looking to improve his financial standing.

9.    Plaintiff reached out to a resource regarding debt consolidation, ultimately resulting in Plaintiff being connected with Defendant.

10.   Around approximately April of 2024, Plaintiff spoke with a representative of Defendant's regarding Defendant's services.

2

11.   Defendant's representative informed Plaintiff that Defendant provides consumers a variety of services, all of which were designed to improve Plaintiff's credit or otherwise result in the resolution of debts Plaintiff enrolled in Defendant's program.

12.   Defendant advised that its services included disputing information that was appearing on Plaintiff's credit reports and impacting his credit score, including hard inquiries and other information, regardless of the accuracy or validity of that information.

13.   Defendant further represented that, ultimately, the goal of its services was to get Plaintiff's enrolled debt rendered uncollectible or otherwise preclude Plaintiff from having to repay those debts, including the general settlement of such debts.

14.   Defendant's services were offered for the explicit and implicit purpose of improving Plaintiff's credit score, history, and/or rating, as Defendant represented that the removal of information from his credit reports and otherwise settling debts through its program would result in Plaintiff's debt and financial issues going away completely.

15.   Defendant further advised that its services would include setting up a bank account, into which Plaintiff's monthly payments would go and from which Defendant would take funds to perform its services.

16.   Plaintiff found Defendant's services desirable as he believed Defendant would be able to get certain information removed from his credit reports and would actively resolve his obligations, and so Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

17.   Defendant failed to adequately and completely explain the contract to Plaintiff, instead pressuring Plaintiff to sign and otherwise overlooking key and material aspects of the terms which otherwise contradicted the oral representations that had been made to Plaintiff.

3

18.   Plaintiff enrolled approximately $10,000 in debt in Defendant's program, and Defendant represented that Plaintiff would end up paying about $7,000 to be completely debt free and to enjoy improved credit.

19.   Plaintiff was told by Defendant that he should cease paying his creditors, and instead divert those payments to Defendant who would use the funds to resolve Plaintiff's debts.

20.   Plaintiff began making his payments to Defendant totaling approximately $260 per month.

21.   Plaintiff maintained these payments to Defendant for months.

22.   Despite Plaintiff's maintenance of payments, Defendant completely failed to perform its services in the manner represented or otherwise get Plaintiff's obligations resolved.

23.   Despite Plaintiff making more than sufficient payments from which a number of his enrolled obligations could and should have been resolved, Defendant failed to resolve any obligations, improve Plaintiff's credit score in any meaningful respect, or otherwise demonstrate it had done anything with Plaintiff's monthly payments.

24.   Upon information and belief, rather than actually provide the services Defendant represented it would provide, Defendant simply retained Plaintiff's monthly payments for its benefit without meaningful performance of any services.

25.   Plaintiff was led to believe his obligations would be resolved and he would enjoy improved credit, yet he made thousands of dollars of payments in exchange for a significantly diminished credit score, defaulted obligations, and significantly increased creditor and debt collector harassment.

26.   As a result of the misrepresented and deficient nature of the services, Plaintiff cancelled his agreement with Defendant.

27. Despite Plaintiff's cancellation of his agreement with Defendant, Defendant failed to refund Plaintiff for payments made in connection with services Defendant failed to completely perform for Plaintiff.

28. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

29. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient services, out of pocket damages including paying Defendant for services it did not perform, out of pocket damages stemming from Defendant's failure to refund Plaintiff's payments, out of pocket damages stemming from Defendant's charging of up-front fees instead of using such funds as represented, as well as numerous violations of his state and federally protected interests – interests which were harmed put at a material risk of harm stemming from Defendant's conduct.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

30. Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

32. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

33. Defendant's represented services in disputing and seeking to remove information from Plaintiff's credit report and its "resolution" services renders it a credit repair organization under the CROA.

   a.  **Violations of CROA §§ 1679b(a)(3)-(4)**

34. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

35. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant's representative promised that information would be removed from Plaintiff's credit report, regardless of whether that information was inaccurate or could otherwise reasonably be removed from Plaintiff's credit reports. This representation was false, deceptive, and misleading, because only inaccurate or otherwise unverifiable information can be removed. Defendant further completely failed to have any information removed from Plaintiff's credit reports in the manner it represented such information would be removed.

36. Defendant further violated the above referenced provisions of the CROA through the generally deceptive and fraudulent nature of its business practices. Defendant represented to Plaintiff, and represents to consumers, that its debt "resolution" services will result in debts being rendered uncollectible and are thus deserving of thousands of dollars in payments. In essence, Defendant suggested that it would use the monthly payments to settle the debts. However,

6

Defendant did not provide its services in in this manner and largely obfuscates and fails to clarify the means it uses to "settle" the debts. The remedies and means used by Defendant are self-help remedies available to any consumer who is aware of their rights, and Defendant's entire business model is premised upon hoping and guessing that, maybe, a creditor lacks information and will thus stop pursing their clients for debts. As discussed below, Defendant had an obligation to explain these rights, which it failed to do. In any event, Defendant's practice of charging consumers thousands of dollars for such services is inherently deceptive and misleading. Defendant deceptively and misleadingly failed to explain the unlikelihood with which its services would be effective, instead preying upon consumers' desperation for improved credit and to have obligations resolved.

37. Defendant further violated the above provisions of the CROA through its contradictory representations regarding its services. Defendant's contract contains numerous clauses which directly contradict the way in which its services were represented to Plaintiff outside of the contractual context. Defendant's inclusion of a merger and integration clause in its contract, in conjunction with the contradictory nature of its representations, further illustrates the duplicitous nature of how Defendant represents its services to consumers.

38. Defendant further violated the above provisions of the CROA through its deceptive billing practices and representations made regarding the same. Defendant suggested to Plaintiff that his monthly fees would go towards paying down his debts. However, rather than apply Plaintiff's payments in this manner, Defendant retained them for itself as it waited to attempt to find some leverage to get the debt rendered "uncollectible." Defendant largely seeks to confuse the nature of its services with traditional "debt settlement" services, making consumers and Plaintiff believe that they are receiving services substantially different from those Defendant actually provides.

7

39. Defendant further violated the above provisions of the CROA through its false representations regarding the impact its services would have on Plaintiff. Defendant represented that its services would improve Plaintiff's credit, yet Defendant's services had the exact opposite effect.

### b.   Violations of CROA § 1679b(b)

40. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

41. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant charged Plaintiff on an upfront basis the day he signed Defendant's contract prior to performing any meaningful services for Plaintiff, and similarly retained all of Plaintiff's payments for its own "retainer" regardless of whether it performed any services for Plaintiff.

### c.   Violation of CROA § 1679c

42.   The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumers. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

8

43. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

    **d. Violation of CROA §§ 1679d(4) & 1679e**

44. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

45. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

    **e. Violation of CROA § 1679f(b)**

46. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

47. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant's contract contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA,

9

including but not limited to the protection regarding the time of when Defendant's fees are "earned" and when Defendant may properly collect such fees.

48. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, MICHAEL RAMSEY, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

## <u>COUNT II – VIOLATIONS OF THE OHIO CREDIT SERVICES ORGANIZATION ACT</u>

49. Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiff is a "buyer" as defined by O.R.C. § 4712.01(A).

51. Defendant is a "credit services organization" as defined by O.R.C. § 4712.01(C)(1).

52. The carve out for attorneys does not apply to Defendant.

### a. Violations of O.R.C. § 4712.04

53. The OCSOA, pursuant to O.R.C. § 4712.04(A), provides that "[b]efore executing a contract or agreement with a buyer or receiving money or other valuable consideration, a credit

services organization shall provide the buyer with a written statement containing" certain information.

54. Defendant violated § 4712.04(A) by failing to provide the statement of rights required to be provided.

### b. Violations of O.R.C. § 4712.05

55. The OCSOA, pursuant to O.R.C. § 4712.05, outlines the requirements for credit service organization contracts.

56. Defendant violated this provision due to its contract's noncompliant nature. Defendant's contract contains but a fraction of the information and disclosures required by the OCSOA.

### c. Violations of O.R.C. § 4712.07

57. The OCSOA, pursuant to O.R.C. § 4712.07, outlines a number of prohibited practices for credit service organizations.

58. § 4712.07(A) provides that a CSO cannot "[c]harge or receive directly or indirectly from a buyer money or other consideration readily convertible into money until all services the organization has agreed to perform for the buyer are completed . . . ."

59. Defendant violated the above in much the same way it violated 15 U.S.C. § 1679b(b).

60. The OCSOA, pursuant to O.R.C. § 4712.07(C), provides that a CSO cannot "[m]ake or use a false or misleading representation in the offer or sale of the services of the organization." Pursuant to O.R.C. § 4712.07(D), a CSO cannot "[e]ngage, directly or indirectly in an unconscionable, unfair, or deceptive act or practice . . . in connection with the offer or sale of the services of a credit services organization." Similarly, pursuant to O.R.C. § 4712.07(L), a CSO cannot "[e]ngage, directly or indirectly, in any fraudulent or deceptive act, practice, or course of business in connection with the offer or sale of the services of a credit services organization.

11

61. Defendant violated the above portions of the OCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### d.  Violations of O.R.C. § 4712.08

62. The OCSOA, pursuant to O.R.C. § 4712.08, lists a number of further conduct which is prohibited, including making "false promises through advertising or other means in the conduct of its business or engage in a continued course of misrepresentations in the conduct of its business" and engaging "in conduct that constitutes improper, fraudulent, or dishonest dealings in the conduct of its business." O.R.C. §§ 4712.08(B) & (C).

63. Defendant violated the above portions of the OCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### e.  Violations of O.R.C. § 4712.09

64. The OCSOA, pursuant to O.R.C. § 4712.09, provides that "No credit services organization shall cause or attempt to cause a buyer to waive a right under [the OCSOA]."

65. Defendant violated this provision through its blatant attempts to cause Plaintiff to waive rights and protections afforded him, as discussed above.

WHEREFORE, Plaintiff, MICHAEL RAMSEY, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to O.R.C. § 4712.10(A);

c.  Awarding Plaintiff punitive damages pursuant to O.R.C. § 4712.10(A);

d.  Enjoin Defendant from further violations of law pursuant to O.R.C. § 4712.10(B),

e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f.  Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE OHIO DEBT ADJUSTING STATUTES

66. Plaintiff restates and realleges paragraphs 1 through 65 as though fully set forth herein.

67. Plaintiff was at all relevant times a debtor residing in Ohio in relation to his dealings with Defendants.

68. Defendant is engaged in "debt adjusting" as defined by O.R.C. § 4710.01(B).

69. The exceptions for attorneys does not apply to Defendant as its debt adjusting services were not provided in conjunction with the practice of law in the state of Ohio. Defendant did not meaningfully practice law in connection with the services provided to Plaintiff, instead primarily acting and representing itself as resolving consumers' obligations.

### a.  Violations of O.R.C. § 4710.02

70. Pursuant to O.R.C. § 4710.02(A)(3), a person engaged in debt adjusting shall "charge or accept only reasonable fees or contributions in accordance with division (B) of this section." Pursuant to O.R.C. § 4710.02(B), "if fees for debt adjusting services are charged or accepted, **directly or indirectly,** no person providing or engaged in debt adjusting shall do any of the following: (1) Charge or accept a fee or contribution exceeding seventy-five dollars from a debtor residing in this state for an initial consultation or initial set up of a debt management plan or similar plan; (2) Charge or accept consultation fees or contributions exceeding one hundred dollars per calendar year from a debtor residing in this state; (3) Charge or accept a periodic fee or contribution from a debtor residing in this state for administering a debt management plan or similar plan, which fee or contribution exceeds eight and one-half per cent of the amount paid by the debtor each month for distribution to the debtor's or thirty dollars, whichever is greater."

13

71. Defendant violated the above provisions of Ohio law through the unlawful and exorbitant nature of the fees they either indirectly or directly charged and/or received from Plaintiff.

72. Violations of these provisions constitute violations of the OCSPA and are subject to the same rights and remedies provided thereby. *See* O.R.C. § 4710.04(A).

WHEREFORE, Plaintiff, MICHAEL RAMSEY, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to § 1345.09(A), in an amount to be determined at trial, for the underlying violations;

c. Awarding costs and reasonable attorney fees pursuant to § 1345.09(F)(2);

d. Enjoining Defendant from further violations of law; and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

73. Plaintiff restates and realleges paragraphs 1 through 72 as though fully set forth herein.

74. Plaintiff is a "consumer" as defined by O.R.C. § 1345.01(D).

75. Defendant is a "supplier" as defined by O.R.C. § 1345.01(C).

76. The OCSPA, pursuant to O.R.C. § 1345.02(A), provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

77. Defendant violated the above provision of the OCSPA through its deceptive and unfair conduct directed towards Plaintiff in connection with the represented and provided services, discussed at length above.

14

78.  O.R.C. § 1345.02(B) provides that, without limiting the scope of the broad prohibition against deceptive and unfair conduct, certain more specific instances of conduct violate the statute, including:

> "That the subject of a consumer transaction has . . . performance characteristics . . . uses, or benefits that it does not have." § 1345.02(B)(1);

> "That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not," § 1345.02(B)(2);

79. Defendant further violated these specific provisions of the OCSPA through its deceptive representations regarding the nature and efficacy of the services it could and would provide, as discussed above.

80. And even further, Defendant's failures to comply with the Ohio Debt Adjusting Statutes further demonstrate its specific violations of the OCSPA.

WHEREFORE, Plaintiff, MICHAEL RAMSEY, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiffs actual damages pursuant to § 1345.09(A), in an amount to be determined at trial, for the underlying violations;

c.  Awarding costs and reasonable attorney fees pursuant to § 1345.09(F)(2);

d.  Enjoining Defendant from further contacting Plaintiffs; and

e.  Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: February 13, 2025                              Respectfully submitted,

s/ Nathan C. Volheim

15

Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Northern District of Ohio
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com